FALL RIVER HOUSING JOINT TENANTS COUNCIL, INC. *vs.* FALL RIVER HOUSING AUTHORITY & another. April 22, 1983. The Fall River Housing Joint Tenants Council, Inc. (Council), the recognized representative of Fall River's public housing tenants brought this action for declaratory and injunctive relief in the Superior Court alleging that the hiring of the defendant Martin "M." Zenni by the defendant Fall River Housing Authority (Authority) as the Authority's executive director violated an agreement contained in a "Memorandum of Understanding" between the Council and the Authority as to hiring practices. After a trial before a judge without a jury, judgment entered dismissing the complaint. The judge ruled that the "judgment of the court" in an earlier Superior Court case involving the Council and the Authority (the so called *Frazier* litigation, Bristol Super. Ct., Civil Action No. 8221, filed January 19, 1979), in which the Council had challenged a different hiring decision of the Authority, precluded the Authority (and Zenni as one whose rights were derivative from the Authority) from raising any issue as to the "existence, form, adoption and approval" of the agreement. He also ruled, however, that the agreement had not been made upon legally sufficient consideration (or substitute therefor) and was thus without legal effect, an issue not precluded by the former "judgment." Without becoming preoccupied with form, we think the working arrangement contemplated by the memorandum (as furthering the egalitarian management of the Authori-

ty) should be analyzed by reference to principles governing contracts. This indeed appears to have been the approach adopted by the parties and the trial judge. The application of those principles, and the absence of any legal or policy restraints, lead us to conclude that the memorandum creates an obligation which a court should enforce.

1. The Council's argument that the issues in this case are precluded by proceedings in the *Frazier* litigation is based upon a fundamental misperception of the legal effect of the document referred to as the *"Frazier* judgment." That document is, in fact, an agreement for judgment, assented to by the parties to the *Frazier* case, which provides in pertinent part that "[t]he Fall River Housing Authority and the Fall River Joint Tenants Council are and have been bound by the terms of the Memorandum of Understanding signed April 1978, which is attached hereto and incorporated herein." This part of the agreement for judgment provides for declaratory relief. The agreement for judgment was therefore not capable of going to judgment under the terms of Mass.R.Civ.P. 58(a)(1), as amended, 371 Mass. 908 (1977), which allow the clerk to prepare, sign and enter judgment as a ministerial matter without awaiting any direction by the court. That provision expressly applies only to agreements for judgment for a sum certain or denying relief. Since, if it were to be adopted as the decision of the court, the agreement for judgment in the *Frazier* case would constitute "other relief," it could not become the "judgment" of the court unless the court expressly approved it pursuant to Mass.R.Civ.P. 58(a)(2), 365 Mass. 827 (1974). Neither the agreement for judgment itself nor the docket sheet on which it was entered (both of which are part of the record) shows any evidence of the requisite approval by the court, nor has the Council claimed that the agreement was approved. It follows that there is no *"Frazier* judgment" to enforce or capable of precluding issues in the present case. See also Restatement (Second) of Judgments § 27 comment e (1980).

2. The judge's ruling that the memorandum lacked legally sufficient consideration is erroneous. "The requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee." *Marine Contractors Co.* v. *Hurley,* 365 Mass. 280, 286 (1974); see 1 Williston, Contracts § 102 (3d ed. 1957). The meaning of contractual "benefit" and "detriment" is well-established. See *Graphic Arts Finishers, Inc.* v. *Boston Redevelopment Authy.,* 357 Mass. 40, 42-43 (1970); 1 Williston, *supra* § 102A, at 382. The record indicates that the Council incurred detriment by becoming bound, under the memorandum's terms, to the performance of a number of specific time consuming duties and obligations which required the expenditure of considerable effort by its members. Even though these labors benefited the Council by giving it a voice in hiring, the fact remains that the Council committed itself to "doing something . . . which [it] was privileged not to do," a recognized characteristic of consideration. See 1 Williston, *supra* § 102A,

at 382. Although it is not necessary to look further for consideration, we also note that the record demonstrates a corresponding benefit to the Authority. The memorandum not only enabled the Authority to satisfy certain regulatory requirements of the Massachusetts Department of Community Affairs (DCA) and the Federal Department of Housing and Urban Development (HUD) but also imposed duties greater than those required by DCA regulations. By so doing, the memorandum triggered the principle that "[t]he requirement of consideration is satisfied [even] if the duty is doubtful or is the subject of honest dispute, or if the consideration includes a performance in addition to or materially different from the performance of the duty." Restatement (Second) of Contracts § 73 comment (b) (1979). See *In Re Lloyd, Carr & Co.*, 617 F.2d 882, 890 (1st Cir. 1980).

3. We have no doubt that the memorandum governs the hiring of an executive director. The "Preliminary Statement" of the document states that it is to cover "all vacant positions on the staff of the Authority." Although the word "staff" is not defined, ensuing provisions point to the conclusion that the parties meant to include the executive director. A section labeled "Job Descriptions" requires the maintenance of detailed descriptions "for every job at the Authority" as part of the memorandum. Section 4(a) of the memorandum's "Hiring Procedure" requires that "all vacancies" not filled by in-house transfer of personnel are to be filled under the procedure previously outlined, which is contained in the memorandum's § 4. Section 4(g) of the procedure requires advertisements in certain newspapers "[i]n the case of a vacancy in the position of Executiye Director." This last provision in particular would be completely out of place if the parties did not intend to cover the selection of an executive director. In reaching our conclusion, we have not considered the two controverted schedules labeled "Authority Work Force" and "Career Ladders" which were not completed at the time of the agreement's execution but which, when later completed, incorporated in each case the position of executive director.

4. We do not consider the memorandum unenforceable because it lacks a termination date. We think this aspect of the case is governed by the analogous contract principle that an agreement of unspecified duration "might fairly be construed as one 'terminable at will by either party upon reasonable notice,'" *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 524 (1957), a principle which appears to be of general application to agreements of unspecified duration. See e.g. *Emerson* v. *Ackerman*, 233 Mass. 249, 252 (1919); *Phoenix Spring Beverage Co.* v. *Harvard Brewing Co.*, 312 Mass. 501, 503, 506 (1942); *Maddaloni* v. *Western Mass. Bus Lines, Inc.*, 386 Mass. 877, 879 (1982); *Labrecque* v. *Niconchuk*, 442 F.2d 1094, 1098 (1st Cir. 1971); *Local Div. 589, Amalgamated Transit Union* v. *Commonwealth*, 511 F. Supp. 312, 316 (D. Mass. 1981). See also 1 Williston, *supra* § 38, at 115-117. Even if a contract is ter-

minable at will, however, termination requires reasonable notice and the contract is "effective at least until the expiration of a reasonable period following notice of termination." *Simons* v. *American Dry Ginger Ale Co., supra* at 525. Assuming, without deciding, that the Authority's decision to consider executive director candidates who had not received a recommendation from a majority of the hiring committee (as required by the memorandum) constituted constructive notice of termination, we conclude that such notice was not timely with respect to hiring decisions for particular vacancies which had already been submitted to the memorandum's procedures. To hold otherwise would make a sham of the memorandum by rendering it voidable at any time that the Authority became dissatisfied with the hiring committee's votes. An agreement so construed would essentially bind the Authority to do nothing, and would render nugatory the DCA regulation which required its negotiation.

5. There is nothing in law or policy which would bar enforcement of the memorandum's procedures. General Laws c. 121B, § 7, inserted by St. 1969. c. 751, § 1, authorizes the Authority to "employ" and "determine [the] qualifications" of an executive director and (in the same sentence) provides for the right of the Authority to delegate to an agent "such powers and duties as it deems necessary or proper for the carrying out of any action determined upon by it." The memorandum's hiring procedures do not involve delegation of the Authority's ultimate right to hire, but merely establish a procedure by which the Authority makes its selection from among pre-screened qualified applicants presented by the hiring committee for consideration. The procedure unquestionably involves a delegation, in part, of the Authority's statutory duty to "determine [the] qualifications" of its executive director, but that delegation is entirely consistent with the power of delegation conferred on the Authority by G. L. c. 121B, § 7. The Authority's reliance on cases discussing "ultimate decisions" of a school committee, *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.*, 375 Mass. 522, 525-527 (1978), is misplaced because the statutes which establish the powers of a school committee, including its hiring powers, conspicuously lack any provision comparable to the power of delegation given a housing authority. See G. L. c. 71, §§ 37, 59B. Even so, school committees have been required to adhere to negotiated *procedures* for resolving issues the determination of which is nondelegable, *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 72 (1978), and cases cited, and are bound by statute to a process (similar in many respects to the voluntarily entered arrangement embodied in the memorandum) whereby a school committee may only elect teachers who have been nominated by the superintendent of schools. G. L. c. 71, § 38. This suggests that there is no public policy of general application which proscribes the sort of arrangement in issue here. We thus find nothing in the statutes or cases which deal with school committee hiring powers which militates against

the memorandum's enforceability. Moreover, several DCA regulations designed to encourage tenants to "share in the management and decision making processes involved in the administration of public housing" support the procedures established by the memorandum. See 760 Code Mass. Regs. § 6.01(d) (1978). These regulations require that local tenant organizations (such as the Council) be advised of, and included in, the hiring process for an executive director, 760 Code Mass. Regs. § 6.02(10)(a) (1978), and that the negotiation of a "tenant participation document" such as the memorandum "include at least all of the rights . . . that are established by [the] regulations." 760 Code of Mass. Regs. § 6.02(16) (1978). There is nothing in the regulations or in G. L. c. 23B (which established DCA) repugnant to the memorandum's hiring procedures. The communication of April 6, 1981, from the DCA's administrator criticizing the scope of the memorandum's hiring procedures is not an interpretation of DCA regulations and appears to reflect no more than the administrator's subjective judgment of the memorandum's range of applicability. We consider the communication to be of little value in resolving this dispute. We also see no basis for severing the executive director's position from the scope of the memorandum on the basis of a policy distinction between officers and employees. The tests for differentiating an officer from an employee expressed in *Attorney Gen.* v. *Tillinghast*, 203 Mass. 539, 543-544 (1909), when applied to the position of an executive director of a housing authority (as the position is described in G. L. c. 121B and in the context of the statute as a whole), all suggest that the position is an employment as opposed to an office. That conclusion has specific support in the provision of G. L. c. 121B, §§ 5 and 7. Contrast *McGrath* v. *Massachusetts Port Authy.*, 350 Mass. 762 (1966). Finally, we need not explore whether the executive director would qualify for "officer" status under any statute of general applicability to those who labor for the State such as G. L. c. 30, since it has been held that an executive director of a housing authority is not in the service of the State. *Chessman* v. *Somerville Housing Authy.*, 332 Mass. 92, 93 (1954).

6. We conclude that the Authority and Council had, at all pertinent times, a binding obligation to follow the hiring procedures set forth in the memorandum, and that those procedures governed the hiring of an executive director. Although terminable at will, no notice of termination would be timely under the memorandum with respect to the filling of particular job vacancies which have already been submitted to its hiring procedures. The record establishes that the position of executive director had been so submitted; that the Council performed its duties under the memorandum in good faith; that the defendant Zenni did not receive the recommendation of a majority of the hiring committee as a "qualified candidate"; and that the Authority hired him nevertheless, over three recommended candidates, despite its binding undertaking to make its selection from among those applicants who received a majority recom-

mendation. Zenni's appointment must be vacated. We express no opin-
ion as to any rights which Zenni may have against the Authority by virtue
of its having entered a contract of employment with him in violation of
the memorandum. See generally *Chessman* v. *Somerville Housing
Authy., supra* 93-94. The judgment is reversed. A new judgment is to
enter (a) declaring that the memorandum of April, 1978, between the
Council and the Authority is valid and binding on both until terminated
by either by means of reasonable notice of the intention to terminate, that
the defendant Zenni was not properly appointed as the Authority's ex-
ecutive director, and that that position is open; and (b) ordering that the
present vacancy in the position of executive director be filled in accord-
ance with the memorandum's terms.

*So ordered.*

*Daniel S. Hendrie (Arthur M. DeAscentis* with him) for the plaintiff.
*Mary Alice S. McLaughlin* for Fall River Housing Authority.