FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,

v.

Laurence MILLER, Barbara Miller, Edwin Carey, Gilbert Demange, William Lancaster, Charles Marshall, Kenneth Phillips, John Zak and Mary Stanley, Defendants.

Edwin CAREY, Charles Marshall, Kenneth Phillips, Laurence Miller and Barbara Miller, Defendants/Counterplaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff/Counterdefendant.

Edwin CAREY, Charles Marshall and Kenneth Phillips, Defendants/Third-Party Plaintiffs,

v.

OFFICE OF THRIFT SUPERVISION, Third-Party Defendants.

Edward CAREY and Charles Marshall, Defendants/Third-Party Plaintiffs,

v.

OFFICE OF COMMISSIONER OF SAVINGS AND RESIDENTIAL FINANCE, Third-Party Defendants.

No. 90 C 5515.

United States District Court, N.D. Illinois, E.D.

Nov. 15, 1991.

Michael Joseph Higgins, William A. Spence, Freeborn & Peters, Chicago, Ill., Bridget A. Gauntlett, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff/counter defendant.

Barbara Matusik Miller, pro se.

John B. Simon, Russ M. Strobel, Nina E. Vinik, Jenner & Block, Karla Wright, Karla Wright, Ltd., Chicago, Ill., Richard L. Lucas, Richard L. Lucas & Associates, Ltd., Addison, Ill., Walter Peter Maksym, Jr., Walter P. Maksym & Associates, Oak Brook, Ill., William H. Theis, Chicago, Ill., for defendants/counter-claimants, third-party plaintiffs and third-party defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff, Federal Deposit Insurance Corporation ("FDIC") brought this action against defendants, Laurence Miller, Barbara Miller, Edwin Carey, Gilbert Demange, William Lancaster, Charles Marshall, Kenneth Phillips, John Zak, and Mary Stanley, former directors and officers of Lyons Federal Trust and Savings ("Lyons") and its subsidiary service corporations. The FDIC claims breach of fiduciary duties, fraud, negligence and breach of contract.

Defendants Carey, Marshall and Phillips (herein referred to as "Director claimants") have counterclaimed against the FDIC for recoupment and have asserted a third-party claim against the Office of Thrift Supervision ("OTS").[1] Additionally, defendants Carey and Marshall have brought a third-party action against the Illinois Office of Commissioner of Savings and Residential Finance ("the Commissioner").[2] Defendants Laurence Miller and Barbara Miller (herein referred to as "the Millers") have counterclaimed against the FDIC for interference with contractual rights and damage to professional reputation.

The FDIC and OTS have moved to dismiss the counterclaims and third-party claims against them, pursuant to Fed. R.Civ.P. 12(b)(1), claiming that the court lacks jurisdiction because the Millers and Director claimants have failed to comply with the requirements of the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(c), 2675(a), 2679(a), 2680(h). The Commissioner has moved to dismiss under Rule 12(b)(1), claiming that jurisdiction over the third-party complaint against it is barred by the Eleventh Amendment. For the reasons stated in this opinion, FDIC's motion to dismiss the Director claimants' counterclaims is DENIED, while FDIC's motion to dismiss the Millers' counterclaims is GRANTED. Third-party defendants OTS and the Commissioner's motions to dismiss the third-party claims against them are GRANTED.

## FACTUAL BACKGROUND

This case concerns a troubled savings and loan institution, Lyons Federal Trust and Savings ("Lyons"). The Federal Savings and Loan Corporation ("FSLIC") became receiver for Lyons in 1987. In its initial action, the FDIC, which has succeeded to claims of Lyons and the FSLIC, alleged that the defendants' breaches of fiduciary and contractual duties, negligence, and, in the case of the Millers, fraud, caused Lyons to lose over $20 million. The losses are specifically attributed to a number of transactions allegedly engaged in by the Millers defendants, as officers of

---

1. The third-party action against the Resolution Trust Corporation was voluntarily dismissed pursuant to a "Tolling Agreement" of May 9, 1991.

2. Director claimant Phillips' action against the Commissioner was dismissed by Minute Order on May 10, 1991.

Lyons, and either assented to or not prevented by the other defendants as members of the Lyons board of directors.

The Director claimants base their counterclaims and third-party claims on the involvement of the counter-defendant, FDIC, and third-party defendant government agencies, OTS and the Commissioner, and their predecessors [3] (to which the counter/third-party complaints refer collectively as "the Regulators") in the affairs of Lyons during the years prior to receivership. According to their allegations, the Regulators, pursuant to a number of supervisory and agreements and directives, assumed "operational duties" at Lyons. (Carey and Marshall Counterclaim and Third-Party Complaint, ¶ 16, Phillips', ¶ 15) This assumption of operational duties allegedly caused Carey, Marshall and Phillips to rely on the Regulators to prevent fraud and improprieties at Lyons during the time period when a "substantial portion" of the allegedly improper activities enumerated in the FDIC's original complaint took place. (Carey and Marshall, ¶ 17, Phillips' ¶ 16). According to the Director claimants, the government regulators therefore bear some portion of the responsibility for losses which are the subject of the FDIC's main action.

The Millers' counterclaims are similar to each other. They assert circumstances which the Millers allege evidence the government's unjustified regulatory interference at Lyons. The Millers claim that the Regulators' actions, which included the leaking of confidential information and ultimately the removal of the Millers as directors and officers of Lyons, damaged their professional reputations and interfered with their contractual rights with Lyons.

## DISCUSSION

### I. COUNTERCLAIMS OF DIRECTOR CLAIMANTS

The FDIC argues that the Director claimants' counterclaims against it should be dismissed because of the Director claimants' failure to comply with procedural requirements imposed by the Federal Tort Claims Act ("FTCA") on parties pursuing claims against federal agencies. The Director claimants respond by arguing that they need not comply with the FTCA's procedural requirements because their claim against the FDIC is one of recoupment.

■■■ The Director claimants do not contest that their allegations against the FDIC sound in tort. Normally, a tort claim against a federal agency like the FDIC must be brought in conformity with the requirements of the FTCA, even if the claim is asserted as a counterclaim. *Federal Deposit Insurance Corporation v. Citizens Bank & Trust Co.*, 592 F.2d 364, 373 (7th Cir.1979). Under the FTCA, a claim against a federal agency like the FDIC must be presented to and denied by the agency before an action can be brought in federal court. 28 U.S.C. § 2675(a). Also, suits against federal agencies under the FTCA must name the United States as a party. *See e.g., Federal Deposit Ins. Corp. v. Hartford Ins. Co. of Illinois*, 877 F.2d 590 (7th Cir.1989); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir.1982). The Director claimants have never presented a claim to the FDIC and have named only the FDIC, not the United States, as counterdefendant.

■■ An exception to the general rules of sovereign immunity exists in the case of counterclaims asserted "with respect to matters in recoupment arising out of the same transaction or occurrence which is the subject matter of the same suit." *Federal Deposit Insurance Corporation v. Citizens Bank & Trust Co.*, 592 F.2d at 373. The government's waiver of immunity in the recoupment context relieves claimants of the burden of conforming with the FTCA's procedural requirements. Parties counterclaiming in recoupment need not name the United States as a party or exhaust administrative remedies before suit.

---

**3.** The OTS has succeeded the former Federal Home Loan Bank Board. 12 U.S.C. § 1462. The Illinois Office of Commissioner of Savings and Residential Finance was formerly the Illinois Savings and Loan Commission. Ill Rev. Stat. ch. 17 ¶ 3307-1.

*Federal Deposit Insurance Corp. v. Carter*, 701 F.Supp. 730, 733 (C.D.Cal.1987). Therefore, if the Director claimants' counterclaims have been properly classified as recoupment claims, they should not be dismissed on the grounds asserted by the FDIC.[4]

■ To enjoy exemption from the procedural requirements of the FTCA, a recoupment counterclaim must, in addition to addressing the same transactions or occurrences as the main claim, aim only at "defeating the government's claim." *Federal Savings and Loan Insurance Corporation v. Quinn*, 419 F.2d 1014, 1017 (7th Cir.1969). The recoupment exception does not extend to any claims seeking affirmative relief. *Id. See also In re Greenstreet, Inc.*, 209 F.2d 660, 664 (7th Cir.1954).

The reasoning behind restricting the recoupment exception to only defensive claims is that a claim whose object is only to reduce or eliminate the government's claim does not implicate recovery from the United States Treasury. It therefore does not raise the same sovereign immunity concerns as a suit which seeks to recover money in addition to defeating the government's claim. *Federal Deposit Insurance Corporation v. Carter*, 701 F.Supp. 730, 733 (C.D.Cal.1987).

■ The FDIC argues that Carey's and Marshall's counterclaim is not a proper recoupment action because it does not concern the same transaction as the FDIC's main claim. According to the FDIC, its main claim concerns specific loan transactions at Lyons, while the Director claimants' counterclaim addresses only the generalized management of Lyons.

An examination of the complaint and the counterclaims, however, belies the FDIC's assertions. First, FDIC's count VII charges the defendants with "failing to es-

tablish internal controls to monitor loans and compliance [and] ... safe and sound banking practices." (Complaint, ¶ 168(d).) This claim of failure to establish "internal controls" is evidently based on the overall management of Lyons, not only the conduct of individual transactions.

Secondly, the counterclaim alleges that the FDIC's "assumption of operational duties" caused the Director claimants to "rely on the Regulators to prevent fraud and improprieties at Lyons ... [and] that a substantial portion of the fraudulent, unsafe, unsound and dangerous transactions alleged by the FDIC" took place during the period when the FDIC was in operational control of Lyons. (Carey–Marshall Counterclaim, ¶ 16, 17.) The essence of the counterclaims is that the improprieties which are the subject of the FDIC's claim should have been prevented by the Regulators. The counterclaims and the main claim therefore do concern the same transactions or occurrences, i.e., the failure to prevent the allegedly dangerous loans at Lyons.

Secondly, the counterclaims fulfill the second requirement of the recoupment exception. They seek only to defeat the government's claims, not to recover any additional damages from the government. As the court understands the counterclaims, the Director claimants aim to recoup only those losses for which they may held liable as a result of the FDIC's main action. (Carey and Marshall, Memorandum in Opposition to Motion to Dismiss, pp. 13–14.) If the FDIC recovers nothing from the Director claimants, Carey, Marshall and Phillips will likewise recover nothing from the FDIC. Consequently, the Director claimants have stated a proper claim for recoupment and the procedural requirements of the FTCA do not constitute a bar.

---

**4.** Some courts have held that parties counterclaiming in recoupment are exempt from the substantive, as well as the procedural requirements of the FTCA. *See e.g., United States v. Johnson*, 853 F.2d 619, 621 (8th Cir.1988). At least one district court has ruled that a counterclaim in recoupment is still subject to the FTCA's substantive provisions. *FDIC v. Carter*, 701 F.Supp. at 734–35. The FDIC's motion to

dismiss is explicitly premised only on the procedural requirements of the FTCA. (Memorandum in Support of Motion to Dismiss at p. 2.) Consequently, the court expresses no opinion as to whether the counterclaim is subject to the FTCA's substantive provisions, whether it would be viable if it were subject to those provisions, or whether it would be viable even if it were not subject to those provisions.

## II. THE MILLERS' COUNTERCLAIMS

The Millers' counterclaims resemble each other and will be treated together. Both Millers allege the FDIC interfered with their contractual relationships with Lyons. (Counterclaim of Barbara Miller, Count I; Counterclaim of Laurence Miller, Count II) Further, the Millers assert that the FSLIC damaged their professional reputations by disclosing unfavorable confidential information to the press. (Counterclaim of Barbara Miller, Count II; Counterclaim of Laurence Miller, Count III.)[5]

The FDIC again raises the procedural requirements of the FTCA in its motion to dismiss, arguing that the Millers should name the United States as a party, and that they have failed to exhaust their administrative remedies before filing suit. The FDIC also argues for dismissal on the basis of the substantive provisions of the FTCA, which bar suits against the government for libel, slander and interference with contract rights. 28 U.S.C. § 2680(h).

■ It must first be noted that the Millers' claims, unlike those of the Director claimants, do not fall within the recoupment exception to sovereign immunity. As previously discussed, the recoupment exception extends only to counterclaims aimed at "defeating the government's claim," but not to claims seeking "affirmative relief" from the government. *Federal Savings and Loan Insurance Corporation v. Quinn*, 419 F.2d 1014, 1017 (7th Cir.1969).

The Millers' theory is that the government has damaged their reputations and interfered with their contractual relationships with Lyons. These claims, unlike the Director claimants', do not aim only to reduce or eliminate any award granted to the government, but also seek affirmative recovery from the government. If the government claim fails, and the Millers' counterclaims succeed, the Millers would

not only defeat the government's recovery, but would recover additional damages which would have to be paid by the government. As the Millers' counterclaims are "affirmative" in this way, not "defensive," they are outside the recoupment exception.

The Millers' claims must therefore be analyzed in terms of the FTCA. *FDIC v. Citizens Bank & Trust*, 592 F.2d 364, 373 (7th Cir.1979) (claims not in recoupment subject to FTCA). Although the parties devoted much of their briefs to the procedural requirements of the FTCA, the court views as dispositive 28 U.S.C. § 2680(h) which exempts from the FTCA any claims arising out of "libel, slander ..... [or] interference with contract rights."

■ The Millers have alleged damage to professional reputation. This is essentially a defamation claim of the type barred under the libel and slander exceptions of § 2680(h). See *Henderson v. Harris*, 672 F.Supp. 1054, 1064 (N.D.Ill.1987) (claim based on injury to reputation barred). Additionally, the Millers' interference with contract claim is barred by the plain language of § 2680(h). As the court would not have subject matter over the Millers' counterclaims even if they conformed with the procedural requirements of the FTCA, it is unnecessary to address those issues. The Millers' counterclaims Millers must be dismissed.

## III. THIRD–PARTY COMPLAINT AGAINST THE OTS

The Director claimants have filed a third-party complaint against the Office of Thrift Supervision ("OTS"). The third-party complaint allege that the Federal Home Loan Bank Board ("FHLBB"), along with the other government regulators, assumed operational duties at Lyons and therefore became responsible for the problems which are the subject of the main action. Under the Financial Institution Reform, Recovery and Enforcement Act, the OTS became the

---

5. Laurence Miller has included a count I in his amended counterclaim. The substance of the claim stated in this count appears at ¶ 30 and ¶ 31 where Miller alleges that, as a result of the government regulators activities, counterplaintiff's "reputation and ... ability to earn a living"

have been destroyed, and that the government regulators have "maliciously interfered directly" with counterplaintiff's ability to earn a living. The court views the allegations of this count as essentially duplicative of counts II and III and therefore will address only counts II and III.

successor in interest to the FHLBB. 12 U.S.C. § 1462. The OTS has moved to dismiss on the basis of lack of jurisdiction, asserting, like the FDIC, the Director claimants' failure to comply with the FTCA by naming the United States as a party defendant, and by lodging an administrative claim before filing suit.

 The Director claimants characterize their action against the OTS as one of recoupment, and urge the application of the same waiver of sovereign immunity which allowed the counterclaim against FDIC. Recoupment, by definition, is an action which defendant asserts against *plaintiff* concerning the same transaction as plaintiff's claim, and is properly aimed only at reducing or eliminating plaintiff's recovery. *Barclaysamerican/Business Credit Corp. v. Paul Safran Metal Co.,* 566 F.Supp. 254, 257 n. 3 (N.D.Ill.1983). The OTS is not a plaintiff in this action and seeks no recovery from the defendants. Therefore, the Director-claimants' third-party action cannot be "in recoupment." Consequently, the recoupment exception to sovereign immunity cannot apply. *See Federal Savings and Loan Insurance Corp. v. Smith,* 721 F.Supp. 1039, 1042–43 (E.D.Ark.1989) (recoupment cannot be basis of third-party action).

Third-party plaintiffs apparently premise their action on the idea that a suit by one governmental agency waives sovereign immunity for all other federal agencies, opening the way for recoupment claims against them. This argument contradicts the principle, articulated by the Seventh Circuit, that, in regard to sovereign immunity, "government agencies do not merge into a monolith; the United States is altogether a different party" from governmental agencies. *Hughes v. United States,* 701 F.2d 56, 58 (7th Cir.1982). Likewise, the OTS is altogether a different party than the FDIC; the filing of suit by one does not waive the sovereign immunity of the other. The recoupment exception therefore does not apply.

 Consequently, the Director claimants' third-party complaint against the OTS is subject to the requirements of the FTCA. The threshold FTCA requirement proves fatal to the third-party complaint as presently pleaded. Actions brought against federal agencies must name the United States as a party. *See Hughes v. United States,* 701 F.2d 56, 58 (7th Cir. 1982); *Stewart v. United States,* 655 F.2d 741 (7th Cir.1981); *Federal Deposit Ins. Corp. v. Hartford Ins. Co. of Illinois,* 877 F.2d 590 (7th Cir.1989) (proper defendant in third-party action against FDIC-receiver is United States). Because the Director claimants have failed to name the United States as a party to their third-party action, the court must dismiss the claim.[6]

## IV. THIRD–PARTY CLAIMS AGAINST THE COMMISSIONER

Defendants Carey and Marshall have instituted a third-party action against the

---

**6.** If the third party action were properly asserted against the United States, the FTCA's administrative claim requirement, the application of which has been argued by the FDIC, would not constitute a bar. Under 28 U.S.C. § 2675(a), a third party claim which is proper under Fed. R.Civ.P. 14 is exempt from the requirement. *See Northridge Bank v. Community Eye Care Center, Inc.,* 655 F.2d 832, 835–36 (7th Cir.1981). According to Rule 14(a), a proper third party claim is asserted against a party "who is or may be liable to the third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff."

A proper third party claim does not rest on "an entirely separate claim" from the main action but rather is "an attempt to pass on to the third party all or part of the liability asserted against the defendant." *Northridge Bank,* 655 F.2d at 836, quoting *Moore's Federal Practice*

¶ 14.07[1] at 14–206 (2 ed. 1979). The liability asserted must be based on a duty to the third-party plaintiff, not only the original plaintiff. *Murray v. Reliance Insurance Co.,* 60 F.R.D. 390, 391–92 (D.Minn.1973).

The essence of the third-party claim is that third party plaintiffs relied on the government regulators to monitor the loan activity at Lyons. As a result of the failure of this government monitoring, the loans which are the subject of the main suit were made and the damages which the FDIC is trying to recover occurred. The claim is therefore aimed at passing on any liability incurred as a result of the FDIC's claims and is based on a duty which the OTS allegedly owed the third-party plaintiffs, not only the FDIC. Accordingly, it would, in its form, be a proper Rule 14 claim and would be exempt from the administrative exhaustion requirement.

Office of the Illinois Commissioner of Savings and Residential Finance ("the Commissioner"). It is based on the same allegations asserted against the FDIC and OTC, i.e., that Carey and Marshall relied on the Regulators to prevent mismanagement at Lyons and therefore that any liability incurred by Carey and Marshall as directors should properly be shared by the Regulators, including the Commissioner. In its motion to dismiss, the Commissioner argues that Carey and Marshall's suit is barred by the Eleventh Amendment.

■ The Eleventh Amendment forbids suits by citizens against the states in federal courts. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Suits against a state agency, like the Commissioner, implicate the Eleventh Amendment only if the agency is an "alter ego" of the state. *Miller–Davis Co. v. Ill. State Toll Highway Authority*, 567 F.2d 323 (7th Cir. 1977).

■ A crucial factor in determining whether an agency is an alter ego of the state is the financing of the agency and whether a judgment against the agency would be satisfied from the state treasury. *Miller–Davis*, 567 F.2d at 327. In *Miller–Davis*, the Seventh Circuit found the Illinois State Toll Highway Authority not to be an alter ego the state, since a judgment against it would impact only the Highway Authority Fund and not the state treasury. *Id.* at 327. In reaching its conclusion, the Seventh Circuit noted that 1) the legislature had disclaimed all liability on the bonds used to finance the Highway Authority Fund, and 2) the legislature had provided for no future appropriations to the fund. *Id.*

■ Under Illinois law, the "ordinary and contingent expenses" of the Commissioner are paid from the Savings and Residential Finance Regulatory Fund ("the fund"). Ill.Rev.Stat. ch. 17 ¶ 3307–19.1. Third-party plaintiffs Carey and Marshall rely on the existence of this fund as establishing the financial independence of the Commissioner, in the same way that the

Highway Fund was dispositive in *Miller–Davis*.

However, there is considerable doubt that any judgment won by third-party plaintiffs Carey and Marshall would be satisfied out of the Savings and Residential Finance Regulatory Fund. Unlike the situation in *Miller–Davis*, there is no express disclaimer by the state for liabilities incurred by the Commissioner. The fund is financed with fees collected from savings associations, which the commissioner must demonstrate "to be ... directly attributable to the individual entities operating under the Act." Ill.Rev.Stat. ch. 17 ¶ 3307–3.

Upon the record before the court, it appears that the fund contains a balance of approximately $168,000. (Affidavit of Commissioner; ¶ 3.) This is less than 1 per cent of the $20 million in liability which third-party plaintiffs seek to shift, at least in part, to the Commissioner. Satisfying this judgment solely from the fund would require a significant fee increase which the affected institutions could argue was not "directly attributable to the individual entities operating under the Act," and therefore illegal.

Additionally, the court notes that ¶ 3307–19.1 expressly designates the fund as being "in the state treasury." Thus, even if the fund were used to pay the judgment sought, the relief could be said to be coming from the state treasury. The fact that, under ¶ 3307–19.1, the salaries of the State officers within the commission are paid from the General Revenue fund of the state treasury is another factor indicating that the Commissioner is not fiscally independent from the state treasury.

■ Where, as here, there is doubt whether a judgment would be satisfied out of state funds, courts have looked to other factors to determine whether a state agency is an arm of the state for purposes of the Eleventh Amendment. *See Adden v. Middlebrooks*, 688 F.2d 1147, 1153 (7th Cir. 1982). A key factor is how the agency is viewed under state law, and whether any legislative provisions indicate that the agency is an arm of the state. *Id.* Other factors deemed relevant are the degree of

independence of or control over the agency and whether the agency can own property in its own name. *Id.*

A number of statutory provisions indicate that the legislature, when it created the Commissioner's office, viewed it as part of the state. The statute creating the office of the Commissioner refers to it as "an agency of the State ... which shall have an officer of the State at its head...." Ill. Rev.Stat. ch. 17 ¶ 3307–1. The decisions of the Commissioner are reviewable under the Administrative Review Law, which covers only the actions of administrative agencies "of the state." ¶ 3307–27; Ill.Rev.Stat. ch. 110 ¶ 3–101. The Commissioner is immune from suit for any good faith action, suggesting that the state meant the extend to him the protection of its sovereign immunity, which is the basis of the Eleventh Amendment. Ill.Rev.Stat. ch. 17 ¶ 3307–2.

The Commissioner's office does not operate with complete independence from the rest of state government. It must report annually to the governor and the general assembly. Ill.Rev.Stat. ch. 17 ¶ 3307–8. Further, any order or action of the Commissioner is reviewable by the Illinois Savings and Loan Board. Ill.Rev.Stat. ch. 17 ¶ 3307–22. Upon the record before the court, it appears that the property used by the Commission is not held in its own name, but is owned by the state. (Commissioner's Affidavit ¶ 13, 14.)

In summary, there is no clear support for the conclusion that the Commission is financially independent from the state. Other factors indicate that, under Illinois law, the Commissioner is considered to be an arm of the state. Consequently, the court, under the Eleventh Amendment, cannot exercise jurisdiction over Carey and Marshall's third-party claim.

In reaching this conclusion, the court rejects third-party plaintiffs' Carey and Marshall's contention that their claims are exempt from the Eleventh Amendment because the original plaintiff, the FDIC, could have asserted a claim without violating the Eleventh Amendment. As stated previously, the focus of a third-party action is the third-party defendants' liability to the third-party plaintiff, not the third-party defendants' possible liability to the original plaintiff. (See footnote 6.) *See also United States v. Illinois*, 454 F.2d 297, 300–01 (7th Cir.1971) (proper focus of Eleventh Amendment inquiry on third-party claim is posture of third-party claim, not original claim). Additionally, the third-party plaintiffs cannot take advantage of any possible recoupment exception to the Eleventh Amendment, because the Illinois Commissioner is not a plaintiff in this action. (See previous discussion at pp. 11–12.)

### CONCLUSION

For the foregoing reasons, FDIC's motion to dismiss the Director claimants' counterclaims is DENIED, and FDIC's motion to dismiss the Millers' counterclaims is GRANTED. Third-party defendants OTS and the Commissioner's motions to dismiss Carey and Marshall's third-party claims are GRANTED.

Parties are urged to discuss settlement of this case. This case is set for status on January 16, 1992 at 10 a.m.