FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,

v.

SOURCE ONE MORTGAGE SERVICES
CORPORATION, Defendant.

CA No. 93–11183–T.

United States District Court,
D. Massachusetts.

Jan. 28, 1994.

Detroit, MI, for Source One Mortg. Services Corp. aka Fireman's Fund Mort. Corp.

## MEMORANDUM

TAURO, Chief Judge.

### I.

### *Background*

On September 13, 1991, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for the insolvent First Mutual Bank for Savings ("First Mutual"), notified Source One Mortgage Services Corporation ("Source One") that it was disaffirming a 1986 mortgage servicing agreement held by Source One, effective November 30, 1991. At that time, Source One was holding more than $4.1 million in funds for the FDIC as receiver of First Mutual.

Although the FDIC's notice only referred to the 1986 servicing agreement, Source One "netted out" over $3.5 million it argues was owed to it as termination fees under the 1986 agreement; a 1984 sale agreement and 1984 servicing agreement, and a 1987 sale agreement and its form servicing agreements, before returning any of the funds to the FDIC. The FDIC now sues to recover the withheld funds, which it claims were unlawfully retained by Source One.

Presently before the court is the FDIC's motion for summary judgment, Source One's motion for partial summary judgment, and the FDIC's motion to compel production of documents.

### II.

### *Summary Judgment*

Essentially, both summary judgment motions focus on three controlling issues: (1) whether Source One's mortgage servicing agreements are "qualified financial contracts" ("QFCs"), as defined by 12 U.S.C. § 1821(e)(8)(D)(i);[1] (2) whether the FDIC

Jonathan W. Fitch, Andrea Peraner-Sweet, John J. Pentz, Sally & Fitch, Boston, MA and Denzil D. McKenzie, McKenzie & Edwards, P.C., Cambridge, MA, for F.D.I.C.

James A. Kobe, Joseph C. Marrow, Richard J. Yurko, Hutchins, Wheeler & Dittmar, Boston, MA, and Carl Von Ende and Marjory Basile, Miller, Canfield, Paddock & Stone,

---

1. FIRREA defines the term "qualified financial contract" to include "any securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, and any similar agreement that the [FDIC] determines by regulation to be a qualified financial contract for the purposes of this paragraph." 12 U.S.C. § 1821(e)(8)(D)(i). If the agreements were QFCs, then under Section 1821(e)(8)(E), Source One would be entitled "to offset or net out any termination values, payment amounts, or other

properly disaffirmed the servicing agreements under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") guidelines; and (3) whether Source One was exempt from compliance with the administrative claims procedures outlined FIRREA because of the First Circuit's decision in *Heno v. FDIC*, 996 F.2d 429, 434 (1st Cir.1993).

During a hearing on the cross motions for summary judgment, this court ordered the parties to brief the issue as to whether the 1984 sale agreement and 1984 servicing agreement, the 1986 sale agreement and 1986 servicing agreement, and the 1987 sale agreement and its form servicing agreements governed the obligations between the FDIC and Source One during the period of September 13 through November 30, 1991—the period between the notification of the disaffirmance and the effective date of the disaffirmance.

## A.

Source One argues that the FDIC's September 13, 1991 disaffirmance letter is plain on its face: it "unambiguously" provides that "the Receiver is exercising its authority and is hereby repudiating the above-referenced agreement effective November 30, 1991." Def.'s Supp. Brief at 3. Source One argues that, as a matter of contract law, a notice to terminate a contract, which states that termi-

nation is effective on a future date, leaves the contract in effect until the specified termination date. In support, Source One cites federal and state law cases [2] and Corbin on Contracts.[3]

Source One next argues that, because the contract, therefore, remained in effect until November 30, 1993, it had a right to net out the termination fees under the terms of the contract. It refers the court to the doctrine of recoupment, in which the netting of counterclaims is allowed when the counterclaims are related to the transaction that also forms the basis of the claim in chief. Noting that the doctrine of recoupment applies to the FDIC's claim here,[4] Source One argues that the recoupment cases establish that the FDIC is bound to honor all elements of the transaction in question and cannot seek to enforce certain contract provisions while ignoring others.[5]

In its supplemental brief, the FDIC counters that, even assuming that Source One was entitled to net out the termination fees pursuant to the contract, FIRREA expressly requires that Source One present any contractual claims to the FDIC in its mandatory claims process. Because Source One's "claim" for termination fees arose out of the FDIC's actions disaffirming and/or terminating the servicing agreements, the FDIC argues that Source One's claim should arise under 12 U.S.C. § 1821(d)(13)(D)(i) and (ii).[6]

transfer obligations arising under or in connection with such qualified financial contracts."

**2.** *In re John J. Sullivan, Inc.*, 128 B.R. 7, 9 (D.Mass.1990); *Simons v. American Dry Ginger Ale Co., Inc.*, 335 Mass. 521, 525, 140 N.E.2d 649 (1957); and *Fall River Housing Jt. Ten. Coun. v. Fall River Housing Auth.*, 15 Mass.App. 992, 994–95, 448 N.E.2d 70 (1983).

**3.** "If a period of notice is required, the contract remains in force and must continue to be performed according to its terms during the specified period after receipt of the notice of termination." 6 Corbin on Contracts § 1266.

**4.** *FDIC v. Miller*, 781 F.Supp. 1280 (N.D.Ill. 1991); *FDIC v. Carter*, 701 F.Supp. 730 (C.D.Ca. 1987).

**5.** Source One also observes that in recoupment cases involving the FDIC, courts have plainly held that compliance with claims procedures like

the Federal Tort Claims Act is not necessary when asserting a recoupment claim. *See e.g., FDIC v. Miller*, 781 F.Supp. 1280, 1284–85 (N.D.Ill.1991).

**6.** 12 U.S.C. § 1821(d)(13)(D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—
(i) any claim or action for payment from, or any action seeking a determination of any rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The FDIC argues that Source One's claim for termination fees is subject to the process because it is a claim for the assets of the failed depository institution, pursuant to 12 U.S.C. § 1821(d)(13)(D)(i). The FDIC also argues that

As a result, the FDIC contends that, under the doctrine of anticipatory repudiation,[7] Source One's claim for damages arose on the date that it was notified of the disaffirmance—Sept. 13, 1991—and it should have immediately filed an administrative claim,[8] in compliance with the mandatory claims process.

### B.

■ Although it is true that the FDIC opted to exercise its right to disaffirm the contract, here the FDIC delayed the effective date of the disaffirmance for more than two months, and continued to act as if the contract was in effect. Nothing in FIRREA preempts the operation of basic principles of contract law or nullifies contract provisions during the interim period before the disaffirmance date. But, FIRREA does prohibit the operation of some contractual language in some contexts. For example, the statute expressly provides that acceleration clauses in leases are not enforceable against the FDIC. 12 U.S.C. § 1821(e)(4)(B).

The logical implication when Congress opts to enact provisions such as § 1821(e)(4)(B) is that, absent specific statutory language, all of the contract terms remain in effect. Even the nature of the FDIC's complaint, which is based upon a breach of contract claim,[9] suggests that it was the FDIC's understanding that the contracts were in effect during the interim period.

As a result, the court finds that during the interim period, Source One properly acted as if the contract remained fully in effect. Consequently, when Source One netted out its termination fees, it simply exercised its contractual right to do so.

■ Furthermore, this court has found nothing in the statute to suggest that Source One's contract right to termination fees should be construed as a "claim" under FIRREA. In *Heno,* the First Circuit noted that "[n]either FIRREA nor its legislative history defines the term 'claim,' nor has FDIC issued regulations defining or clarifying its meaning." *Id.* 966 F.2d at 433 n. 9. The First Circuit further observed that, although the District of Columbia Circuit Court has used bankruptcy practice as a "promising source" for discerning Congressional intent as to the meaning of the term "claim" in FIRREA, "the Bankruptcy Code definition of 'claim' is plainly inapposite to a claim for repudiation against FDIC …" *Id.* at 433.[10]

Given the absence of a clear definition for "claims" under FIRREA, the court is unconvinced by the FDIC's arguments that Source One was obligated to comply with the mandatory claims process outlined in FIRREA. Under the FDIC's expansive definition of "claims", after June 28, 1991, Source One would not even be able to deduct its regular servicing fees without first completing the administrative claims procedure, because such fees might be construed to be a "claim"

the claim arises as result of action taken by the FDIC, pursuant to 12 U.S.C. § 1921(d)(13)(D)(ii).

7. The Doctrine of Anticipatory Repudiation provides that an anticipatory breach of a contract is one committed before the performance date and is the product of words or acts evincing an intention to refuse future performance. *Central Trust Co. v. Chicago Auditorium Ass'n,* 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811 (1916). Upon such a breach, the nonbreaching party may treat the contract as broken and sue for damages immediately. *Brauer v. Hobbs,* 151 Mich.App. 769, 391 N.W.2d 482 (1986).

The anticipatory repudiation doctrine is not recognized in Massachusetts, *see Capitol Indemnity Corp. v. First Minnesota Construction Company,* No. 74–1682–Z (D.Mass. July 5, 1983) ("in Massachusetts there is no actionable breach until performance by the other party in fact becomes due"). But the FDIC argues that Michigan law, which does recognize the Doctrine, controls this case. Pl.'s Supp. Brief at 5 n. 3.

8. But under the anticipatory breach doctrine, a breaching party may not use the date of its purported anticipatory breach against a non-breaching party to argue that the nonbreaching party should have sued immediately. Rather, the aggrieved party "has the option to either sue immediately for the breach of contract or wait until the time of performance." *Brauer,* 391 N.W.2d at 485.

9. The FDIC alleges that "Source One [] breached the Servicing Agreement by wrongfully withholding approximately $3,534,063.03 due and owing the FDIC as Receiver." Compl. ¶ 14.

10. The First Circuit also quoted language from *Homeland Stores, Inc. v. Resolution Trust Corp.,* No. 91–1304–PFK, 1992 WL 403092, 1992 U.S.Dist LEXIS 20331 (D.Kan.1992) noting that "[a] contract claim by plaintiff is not a creditor action and therefore is not subject to the claims process." *Heno,* 996 F.2d at 433 n. 10.

against the assets of First Mutual. And, even the FDIC concedes that Source One did nothing wrong by deducting its contractual fees. It only alleges that the termination fees were wrongfully withheld. *See* Def.'s Reply Brief at 6 n. 4.

This court disagrees with the FDIC's position, and concludes that because Source One did not have a "claim" against the FDIC, compliance with the mandatory administrative claims process was unnecessary.

### C.

 In any event, the court notes that, even if this had been a "claim" under FIRREA, Source One would not have been required to comply with the mandatory administrative claims process under *Heno v. FDIC,* 996 F.2d 429, 434 (1st Cir.1993). This court has previously noted that, in FIRREA, Congress established a comprehensive and mandatory scheme for the adjudication of claims against a failed financial institution for which the FDIC has been appointed Receiver. *Espinosa v. DeVasto,* 818 F.Supp. 438 (D.Mass. 1993). But, as the First Circuit explained in *Heno v. FDIC,* 996 F.2d 429, 432–33 (1st Cir.1993), there are two types of claims un-

der FIRREA. Parties that assert claims for the assets of the failed institutions have claims under § 1821(d) and are subject to the administrative claims process in § 1821(d). But, when a party's claim arises from the FDIC's disaffirmance of a contract, the claim arises under § 1821(e), and claims under § 1821(e) are not subject to the mandatory administrative claims process in § 1821(d).[11]

Here, if Source One was not merely exercising its contract rights, but had a "claim" against the FDIC, such a "claim" resulted from the FDIC's disaffirmance of the servicing agreements. Consequently, the claim would arise under § 1821(e), and would not be subject to the mandatory claims process outlined in § 1821(d).[12] As a result, this court disagrees with the FDIC's arguments that Source was required to comply with the administrative claims process.

### D.

 The FDIC has suggested that one consequence of allowing Source One to net out termination fees will be to prefer Source One over similarly situated creditors, in violation of the distribution provisions of FIR-

---

11. Id. at 433. The First Circuit specifically noted:

> The administrative claim allowance procedure established under subsection 1821(d) is inapposite to direct claims for FDIC's repudiation of a contract entered into by the failed financial institution prior to the receivership. Subsection 1821(d) governs only claims against assets of the failed financial institution. Subsection 1821(e) authorizes claims for compensatory relief for direct loss occasioned by FDIC's repudiation of a pre-receivership contract entered into by the failed institution.

12. The court is also unpersuaded by the FDIC's argument that Source One's "claim" is precluded because First Mutual did not terminate the agreements prior to the date of the FDIC's appointment. The FDIC notes that the statute provides that damages arising from the disaffirmance of a contract are to be measured as of the date on which the receiver is appointed, and not when the agreement is repudiated. 12 U.S.C. § 1821(e)(3)(A)(ii)(I). The FDIC, therefore, argues that because Source One's claims arose after the FDIC's appointment, but before the contracts were disaffirmed, the claims are not cognizable under FIRREA.

In addition, the FDIC also argues that Source One's right to net out the termination fees owed under the contracts arose only if First Mutual terminated the agreements *without cause.*

Although the language of the statute does suggest that the FDIC is correct—that only those claims that arise prior to the date of the FDIC's appointment will be recognized by FIRREA, the court is unwilling to read such an anomalous conclusion into the statute:

> Although superficially such reasoning appears consistent with § 1821(e), this argument conflicts with the statutory intent of FIRREA to allow claims for contracts in force prior to insolvency. Defendants' reasoning could be extended to deny any contractual claim arising from repudiation. Such claims are always contingent on the date of insolvency because a receiver cannot repudiate a contract until after it is appointed. In the Court's view, the crucial question is whether Citibank had an unqualified right to expect performance of the non-compete provision on the date of receivership.

*Citibank, N.A. v. Federal Deposit Insurance Corporation,* 827 F.Supp. 789, 791 (D.D.C.1993).

Moreover, as noted above, the court disagrees that Source One had a "claim" under FIRREA. Rather, the court has found that Source One simply exercised a contract right when it netted out the termination fees, and this section would be inapplicable.

REA. *See* 12 U.S.C. § 1821(i) (limiting the amount a creditor may receive to a pro rata share of the receivership assets). But, consistent with the doctrine of recoupment, the court is convinced by the defendant's argument that Source One and other creditors are not similarly situated. For example, in bankruptcy law cases, the courts have clearly recognized that a creditor may recoup offsetting prepetition obligations owed under a contract without being accused of a preference.[13] Similarly, in this case, permitting Source One to exercise its contract rights is logical and fair when the FDIC has benefitted from the continuing existence of the contract.

■ Finally, the court observes that its finding should not restrict the FDIC's authority and flexibility under FIRREA. Rather, the FDIC may still repudiate contracts, effective immediately or on a specified date, simply by stipulating to a given date in its notification letter. The court's holding simply provides that when the FDIC continues to obtain the fruits of a contract with another party, it should not be heard to complain when the contracting party likewise seeks to exercise its rights under the agreement.

### III.

#### The FDIC's Motion to Compel Production of Documents

On August 25, 1993, this court granted Source One's motion to compel the production of several FDIC documents. At the September 8, 1993 conference, the court denied the FDIC's motion for reconsideration of this decision. In addition, in lieu of ruling the FDIC's motion to compel, filed a few days before the September 8 conference, the court ordered the parties to complete discovery in compliance with Local Rules 26.2(A) and 26.1(B). Despite this order, counsel for both parties have been unable to resolve yet another discovery conflict.

The FDIC seeks documents responsive to document requests numbered 16–18 and 24–26. With respect to document requests 16–18, Source One claims that it has no documents responsive to these requests. The court, therefore, will order Source One to file an affidavit of compliance with Local Rules 26.2(A) and 26.1(B) with respect to those documents.

With respect to document requests 24–26, the FDIC seeks documentation supporting Source One's alternative claim to compensatory damages. The FDIC argues that Source One's position is "indefensible" because the disputed documents all relate to Source One's claim that it experienced "actual direct compensatory damages" as a result of the disaffirmance of the agreement at issue.

In light of the court's ruling that the contract governed the period between September 13, 1991 and November 30, 1991, Source One shall provide the FDIC with any documents relating to the termination fees withheld by Source One. Source One shall also provide the FDIC with any documents relating to any additional claims Source One may have to additional compensatory damages.

### IV.

#### Conclusion

For the foregoing reasons, the court finds that the contract governed the period between September 13, 1991 and November 30, 1991, Source One was entitled to net out the termination fees pursuant to the parties' agreements. The FDIC's motion for summary judgment will be DENIED, and Source One's motion for partial summary judgment will be DENIED in part and GRANTED in part.

In addition, the FDIC's motion to compel discovery will be DENIED in part and GRANTED in part as follows:

A. With respect to document requests numbered 16–18, Source One shall file an affidavit of compliance with Local Rules 26.-2(A) and 26.1(B); and

---

**13.** *In re Mohawk Industries, Inc.,* 82 B.R. 174, 177–78 (D.Mass.1987); *In re Bob Brest Buick, Inc.,* 136 B.R. 322, 324 (D.Mass.1991).

46

B. With respect to document requests 24–26, Source One shall provide the FDIC with any documents relating to the termination fees withheld by Source One. Source One shall also provide the FDIC with any documents relating to any additional claims Source One may have to additional compensatory damages.