**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of New Bank of New England, Plaintiff,**

v.

**Theodore F. diSTEFANO, Defendant.**

**C.A. No. 92–461L.**

United States District Court, D. Rhode Island.

Dec. 14, 1993.

---

Matthew Thomas Oliverio, Edwards & Angell, Providence, RI, for plaintiff.

Michele A. Theroux, Charles J. McGovern, Philip W. Noel, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is presently before the Court on the motion of plaintiff Federal Deposit Insurance Corporation ("FDIC") to dismiss defendant's counterclaims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Also before the Court is the motion of defendant diStefano to join the United States as a third party defendant. For the reasons set forth herein, both motions are denied.

### FACTUAL BACKGROUND

Defendant is the former President and Chairman of the Board of Directors of Colonial Savings Bank ("Colonial"), a federally insured savings and loan association in Rhode Island. In 1988, defendant borrowed $1,525,000 from Bank of New England Old Colony, N.A. ("Old Colony"). He secured this note with a mortgage of the same amount on a building and property along Pontiac Avenue in Cranston, Rhode Island. In addition to the mortgage, defendant gave Old Colony and its assigns the power to collect rents from this property should defendant default on the note. Seacoast Mortgage Corporation ("Seacoast") and Colonial became tenants in this building.

In January of 1991, the Bank of New England, N.A. ("BNE"), and its subsidiary, Old Colony, were declared insolvent. The FDIC became BNE's receiver, established the New Bank of New England ("NBNE"), and then later became NBNE's receiver. NBNE became the holder of the $1,525,000 note and mortgage. In accordance with 12 U.S.C. § 1821(d)(3)(B)(i), the FDIC set a "bar date" of November 14, 1991 for the filing of claims against the receiver or receivership estate. In April 1991, defendant defaulted on the note. In May 1991, the FDIC demanded full repayment.

In the meantime, Resolution Trust Corporation ("RTC") became conservator of Colonial and Seacoast at the end of May 1991. Defendant then became caught in a "bureaucratic whipsaw". The FDIC demanded the rents from the Pontiac Avenue property from RTC, but RTC insisted on placing the rents in escrow until it could determine who was entitled to the money. Defendant postulates that this maneuver cost him a chance to cure the default. In November 1991, the FDIC sought to foreclose on the property. Defendant then filed suit in this Court seeking injunctive relief and making damage claims. The Court issued a temporary restraining order barring foreclosure on November 13, 1991. That order was vacated on November 21, 1991 when the Court determined that 12 U.S.C. § 1821(j) prohibited the requested injunction. Foreclosure occurred in December of 1991 and FDIC as receiver for NBNE ended up acquiring the Pontiac Avenue property. Defendant (as plaintiff in that case) asserted damage claims against the FDIC and RTC for breach of contract, violation of due process and equal protection, and conspiracy to defraud, but those claims were dismissed as to the FDIC on June 25, 1992 for lack of jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) based on 12 U.S.C. § 1821(d)(13)(D). *diStefano v. The Resolution Trust Corporation and Federal Deposit Insurance Corporation*, C.A. No. 91–600L (D.R.I. June 25, 1992). Later, those claims as asserted against RTC were dropped, so the whole case was dismissed.

On August 25, 1992, the FDIC filed this suit against defendant seeking to recover a deficiency resulting from the foreclosure and subsequent sale of the property. On October 16, 1992 defendant answered and filed counterclaims against the FDIC for breach of contract, violation of equal protection, violation of due process, and conspiracy to defraud. Plaintiff filed a motion to dismiss the counterclaims, and later, defendant filed a motion to implead the United States as a third-party defendant contending that the United States is liable for the wrongful conduct of the FDIC. After hearing oral arguments in March, 1993, the Court took the matter under advisement. This phase of the case is now in order for decision.

### STATUTORY BACKGROUND

As this Court noted in the prior suit between these parties, jurisdiction of the district courts is strictly controlled by statute. In 1989, Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), Pub.L.No. 101–73, 101 Stat. 183 (1989) (codified into 12 U.S.C.). The legislation includes an administrative claims procedure for asserting claims against the FDIC or RTC as receiver of a seized institution. Those with claims against the

failed institution or the receiver must submit them to the receiver within a certain time frame. The receiver then adjudicates the claims in accordance with the procedures set forth in the statute. 12 U.S.C. § 1821(d)(3)–(10). If the receiver denies the claim or fails to timely act on the claim, the claimant may file suit. *Id.* § 1821(d)(5)–(6). The district courts lack jurisdiction over claims against assets of the failed institution or claims for damages for acts and omission of the receiver unless the claims procedure has been complied with. *Id.* § 1821(d)(13)(D). Thus, normally, in order for a claim to be brought in this Court, it must first be submitted to the receiver through the claims procedure. *See Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1151–2 (1st Cir.1992).

## DEFENDANT'S PREVIOUS SUIT

The claims that defendant has brought as counterclaims in this case were also asserted by defendant when he sued the FDIC and RTC. In that case, this Court held that it had no jurisdiction over those claims until the administrative procedure detailed in FIRREA had been followed. *diStefano v. Resolution Trust Corp. and FDIC*, C.A. No. 91–600L, p. 1–3 (D.R.I. June 25, 1992). The only difference between the claims in the first suit and the ones that defendant now avers is that the present claims are counterclaims. The Court concludes that claims filed as counterclaims must also follow the administrative procedures of section 1821(d). The Court also determines that those counterclaims fall within the type of claims covered by the jurisdictional bar of section 1821(d)(13)(D).

## I. FIRREA JURISDICTIONAL ISSUES

### A. Counterclaims are Claims

 A counterclaim is a claim brought by a defendant in opposition to the plaintiff. *Black's Law Dictionary* 315 (5th ed. 1979). There is no provision of FIRREA that exempts counterclaims from the jurisdictional bar of section 1821(d)(13)(D). Other courts that have examined the issue have ruled that counterclaims are treated the same as claims for the purposes of the jurisdictional bar. *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991); *Federal Deposit Insurance Corp. v. Updike Brothers,*

*Inc.*, 814 F.Supp. 1035, 1040 (D.Wyo.1993); *Resolution Trust Corp. v. Wayne Coliseum Ltd. Partnership*, 793 F.Supp. 900, 904 (D.Minn.1992); *Federal Sav. and Loan Ins. Corp. v. Shelton*, 789 F.Supp. 1367, 1372–73 (M.D.La.1992); *New Maine Nat. Bank v. Reef*, 765 F.Supp. 763, 767 (D.Me.1991). The Court in Shelton noted:

> The Court recognizes the jurisdictional void presented by its interpretation of FIRREA since it is possible to find subject matter jurisdiction over a case while not being able to adjudicate affirmative defenses and counterclaims which arise in the same law suit. However, this anomaly does not allow the Court to create jurisdiction where Congress has expressly forbidden the Court to exercise such authority.

789 F.Supp. 1367, 1373. Therefore, the fact that defendant makes his claims as counterclaims has no bearing on the applicability of the mandatory claims procedure.

### B. The Jurisdictional Bar

There is a great deal of confusion amongst the courts on how broadly to interpret the jurisdictional bar of section 1821(d)(13)(D) and the claims procedure of section 1821(d)(3–10). Some courts have read the language as a bar to any suit that would result in a claim being satisfied out of the failed institution's assets, regardless of the timing or source of the claim, *see e.g. Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 393–4 (3rd Cir.1991), while others have limited the coverage of those sections to creditors of the failed institution before it entered receivership. *See e.g. Rechler Partnership v. Resolution Trust Corp.*, 1990 U.S.Dist. LEXIS 18734 at *4–5 (D.N.J. September 21, 1990). A recent First Circuit decision may indicate a preference for a more narrow approach. *Heno v. Federal Deposit Insurance Corp.*, 996 F.2d 429, 434 (1st Cir.1993) (Although the decision is hardly conclusive on the point, the Court seems to favor the *Rechler* court's view that the administrative claims procedure is directed to claims existing before the appointment of the receiver).

An extremely well reasoned approach to this problem has recently been published by Judge Leif M. Clark of the Western District of Texas Bankruptcy Court. *In Re Scott,*

157 B.R. 297 (Bankr.W.D.Tex.1993). This Court finds that reasoning sound and consistent with the statute as well as the First Circuit's language in *Heno*. The decision is one of the first to make an in depth examination and interpretation of the jurisdictional bar which complies with the expressed Congressional mandate to resolve claims quickly through the claims procedure, while at the same time protecting against possible constitutional infirmities.

Although drafted in two paragraphs, the jurisdictional bar breaks down into three distinct provisions.[1] The first provision covers "any claim ... from ... the assets of any depository institution for which the Corporation has been appointed receiver...." 12 U.S.C. § 1821(d)(13)(D)(i); the second includes "any action seeking a determination of rights with respect to the assets of a depository institution for which the Corporation has been appointed receiver...." *Id.;* the third provision encompasses "any claim relating to an act or omission of such an institution or the Corporation as receiver." *Id.* § 1821(d)(13)(D)(ii); *In Re Scott*, 157 B.R. at 310–316. If a claim falls within any of these provisions, then compliance with the administrative claims procedure is a prerequisite to federal district court jurisdiction. 12 U.S.C. § 1821(d)(3)(6), (13)(D).

### 1. Claims from the Assets

The first provision of the jurisdictional bar comes from the first clause of section 1821(d)(13)(D)(i). In a leading case, the Third Circuit has held that this clause covers any suit on a claim that would be satisfied out of the assets of the failed institution. *Rosa*, 938 F.2d at 393–4. The First Circuit recently adopted this view in *Marquis*. 965 F.2d at 1152–53. This interpretation, however, fails to meld the language of the jurisdictional bar with that of the administrative claims procedure. A different view of this language resulting from an examination of

the wording of the entire statute as well as the intent of Congress was taken by the Bankruptcy Court in *Scott*. Comparing the language of the administrative claims procedure to that of the jurisdictional bar, the Court interpreted the word "claim" as it appears in the first clause of section 1821(d)(13)(D)(i) to mean a claim of a creditor. *In re Scott*, 157 B.R. at 309–313. Thus, that section of the jurisdictional bar would only apply to the creditors of the failed institution, typified by its former depositors and vendors. This interpretation of the statute seems to conflict with the all inclusive approach adopted by this Circuit in *Marquis*. This Court, however, concludes that there is no need to address this conflict. As will be discussed later, defendant's claims run afoul of the second and third provisions contained within the jurisdictional bar. Any further discussion of the two competing interpretations of the first provision is unwarranted at this time.

### 2. Actions Seeking a Determination of Rights

■ The second provision of the jurisdictional bar, which comes from the second clause of section 1821(d)(13)(D)(i), requires the use of the administrative claims procedure before a court may hear an action to determine the rights of the parties in an asset held by the receiver. It concerns the property and contract rights surrounding any asset formerly held by the failed institution. This very broad provision is important because it allows the receiver to have the first opportunity to resolve disputes over the holdings of the institution. Examples of such disputes include an action attacking the validity of a loan agreement, *Deera Homes v. Metrobank for Savings*, 812 F.Supp. 375, 377 (E.D.N.Y.1993); a breach of contract suit to halt a foreclosure, *Nepstad v. Federal Deposit Ins. Corp.*, 1992 WL 455434 at *5 (D.Wyo., Nov. 17, 1992); and a breach of credit contract claim, *Wayne Coliseum*, 793 F.Supp. at 904 n. 5. Disputes of this kind interfere with

---

1. 12 U.S.C. § 1821(d)(13) reads:

 (D) Limitation on judicial review
 Except as otherwise provided in this subsection, no court shall have jurisdiction over—
 (i) any claim or action for payment from, or any action seeking a determination of rights

with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

the receiver's efficient winding up of the failed institution's affairs. This interpretation, however, seems to conflict with the language of FIRREA because the administrative claims procedure appears only to apply to creditor claims while provision two of the jurisdictional bar applies to creditors and other claimants alike.

The only exception to the jurisdictional bar is contained in its introductory clause: "except as otherwise provided in this subsection." 18 U.S.C. § 1821(d)(13)(D). This exception clearly refers to the administrative claims procedure. *Marquis*, 965 F.2d at 1153. In other words, compliance with the claims procedure is the only way for a district court to circumvent the bar and acquire jurisdiction.

As can be seen from other sub-sections of the Act, Congress knows how to prohibit a court from taking certain actions. *E.g.* 12 U.S.C. § 1821(j) (prohibits courts from issuing injunctions affecting the receiver); 12 U.S.C. § 1821(d)(13)(C) (precludes courts from attaching assets in the possession of the receiver). If Congress had intended to remove all recourse for rights determination claimants, it certainly would have done so clearly and expressly. Thus, the best way to reconcile the language of the claims procedure and the jurisdictional bar is to read the statute as withholding jurisdiction in the courts of all rights determination cases until the provisions of the administrative claims procedures have been followed, and to interpret the claims procedure as including claimants seeking rights determinations as well as creditor claimants.

### 3. Claims Relating to Acts or Omissions

■ The third provision of the jurisdictional bar is contained in section 1821(d)(13)(D)(ii). It makes compliance with the administrative claims procedure a prerequisite for a law suit alleging acts and omissions of the receiver or of the failed institution. The analysis regarding the applicability of this provision is similar to that contained in the section above on rights determination actions. The language of this provision is clear and unambiguous. The claims procedure provides the only escape from a total jurisdictional bar on all tort suits

against the receiver or failed institution. Thus, although the language of the claims procedure is targeted to claims of creditors, it must also include tort claimants. For that reason, any lawsuit based on an act or omission of the receiver or the failed institution must be preceded by compliance with the FIRREA administrative procedures.

### C. Defendant's Claims Fall within the Jurisdictional Bar

In the instant case, defendant alleges that plaintiff's wrongful actions constitute various torts, including constitutional violations, as well as contractual transgressions. As indicated by the preceding analysis, the defendant's tort claims, including the constitutional ones, relate to an act or omission of the receiver and are barred by the so called third provision of the jurisdictional bar contained in 12 U.S.C. § 1821(d)(13)(D).

Defendant's contract claim is likewise barred. As a "pure contract" claim, defendant's breach of contract allegation is a rights determination action because it requires the court to sort out the interests and liabilities of the parties concerning an asset held by the receiver. The note and mortgage held by NBNE were assets of that institution. An asset is "Anything owned by a person or organization having monetary value. . . ." and, specifically in the banking industry, "Loans, discounts, investment securities, (government bonds, municipal bonds) and claims against other banks." Thomas P. Fitch, *Dictionary of Banking Terms* 35 (1990). Other courts have held that the second clause of section 1821(d)(13)(D)(i) applies to mortgages. *Deera Homes*, 812 F.Supp. at 377; *Resolution Trust Corp. v. Love*, 1992 WL 455432 at *5 (D.Wyo. Nov. 25, 1992); *Block v. Resolution Trust Corp.*, 1992 WL 164985 at *1 (E.D.Pa. June 9, 1992); *see also In re Scott*, 157 B.R. at 313–4. Accordingly, the contract claim, as a pure contract claim, is barred by the second provision of the jurisdictional bar contained in the second clause of 12 U.S.C. § 1821(d)(13)(D).

If the contract claim is interpreted to be a tort claim, the result is no different. Under that interpretation the claim is excluded by the third provision of the jurisdictional bar encompassing acts and omissions of the receiver. As a result of the section

1821(d)(13)(D) jurisdictional bar, defendant's claims are subject to the mandates of the FIRREA administrative claims procedure. In short, defendant's claims must be denied by the FDIC before he can bring those claims to this Court.

## D. Timing and Notice

■ In addition to the interpretive problems noted above, many courts and commentators have struggled over how the coverage of the claims procedure and jurisdictional bar vary with the precise time that a claim arose. Some, including defendant in the present case, have tried to make a distinction between claims arising before and after an institution goes into receivership. *E.g. Rechler Partnership v. Resolution Trust Corp.,* 1990 U.S.Dist. LEXIS 18724 at *4–5 (D.N.J. Sept. 21, 1990) (suggesting that the claims procedure applies to claims arising before receivership, but not after). There is nothing in the statute to suggest that it was not intended to apply to claims arising after the institution was placed into receivership. Indeed, the statute specifically applies to claims concerning acts and omissions of the receiver in provision three of the jurisdictional bar. 12 U.S.C. § 1821(d)(13)(D)(ii). The receiver does not exist before its appointment. Since the receiver could not commit an act that would give rise to such a claim before its appointment, acts and omission claims against the receiver can only be post-receivership claims. An interpretation of the statute that would place post-receivership claims outside the scope of FIRREA would make that portion of the statute impotent—a result this Court cannot accept. "It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute. A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant...." *Knutzen v. Eben Ezer Lutheran Housing Center,* 815 F.2d 1343, 1348 (10th Cir.1987); *Indianapolis Power and Light Co. v. Interstate Commerce Comm'n,* 687 F.2d 1098, 1101 (7th Cir.1982). *See* 2A *Sutherland Statutory Construction* § 46.06 (5th Ed.1992). Thus, the jurisdictional bar and the claims procedure must be deemed to apply to claims arising before and after the appointment of the receiver.

This reading of the statute is not without its shortcomings, however. The extreme example is the paradoxical problem of a claim that arises after the claim bar date. As noted above, upon appointment, the receiver sets a date, usually about six months in the future, before which all claims must be brought—the ubiquitous "bar date". 12 U.S.C. § 1821(d)(3)(B)(i). According to the statute, claims filed with the receiver after that date *may* be allowed to proceed through the claims procedure if the receiver, in its sole unguided discretion, allows them. *Id.* § 1821(d)(5)(C)(ii). Therefore, for example, a party injured by the negligence of the FDIC six months after the bar date may only have his claims adjudicated on the merits if consented to by the FDIC. Since disallowance of a claim because it was filed outside the bar date is not part of the claims determination procedure of section 1821(d)(5)(A), (B), no court relief is available. Court relief is only available when the receiver denies a claim on its merits or fails to respond to a claim in a timely manner. *Id.* § 1821(d)(6)(A); *see Fairways Properties, Inc. v. Federal Deposit Ins. Corp.* 1991 WL 501639 at *2 (D.Mass, Dec. 16, 1991). Thus, if the FDIC refused to review the claim, no remedy would be available to that claimant.

Such situations are intolerable for several reasons. First, the receiver becomes the sole gatekeeper of claims against it. It has unfettered discretion to deny some individuals with claims *any* remedy. This is a conflict of interest that implicates the due process rights of the claimant. Second, if claims arising after the bar date may not be brought without the consent of the receiver and those claims concern the property of the claimant, the FDIC could be engaging in an impermissible taking under the Fifth Amendment. *C.f., 701 NPB Associates v. Federal Deposit Insurance Corp.,* 779 F.Supp. 1336, 1341–2 (S.D.Fla.1991). Third, when the receiver has the authority to deny claims in this particular situation without any possibility of review in the courts, there is a delegation of judicial power to an non-judicial agency. Similar delegations have been found unconstitutional by the Supreme Court. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 69–72, 102 S.Ct. 2858, 2870–72, 73 L.Ed.2d 598 (1982). The high court expressing its concerns with

FIRREA's predecessor statute as a possible delegation of authority away from Article III courts noted, "statutes can and should be read to avoid [such] difficulties." *Coit Independence v. Federal Savings and Loan Corp.*, 489 U.S. 561, 578, 109 S.Ct. 1361, 1371, 103 L.Ed.2d 602 (1989).

Those individuals with claims arising before the bar date may have similar problems. The notice provisions of § 1821(d)(3) are targeted at creditor claims. Upon taking over a failed financial institution, the receiver is only required to send notice to those with obvious claims such as depositors and vendors of the failed institution. *See* 12 U.S.C. § 1821(d)(3)(B), (C). The statute requires that the receiver give notice to newly found claimants upon their discovery. § 1821(d)(3)(C)(ii). The statute contains no provision that covers situations where the receiver overlooks or ignores the notice requirement, however. Thus, an individual with a non-creditor claim arising before the bar date may not receive notice until after the time for filing has expired. Through no fault of his own, such an individual would then be barred from proceeding unless the receiver decided to let him proceed under § 1821(d)(5)(C)(ii). Such a situation presents grave constitutional problems as noted above. Defendant finds himself in this category of claimants.

An interpretation of the statute which avoids those constitutional issues was espoused by the Bankruptcy Court of the Western District of Texas. That Court cured the defects by requiring that formal notice be given to each claimant along with an opportunity to respond prior to his claim becoming time barred. *In re Scott*, 157 B.R. at 317–18. The Bankruptcy Court's interpretation follows the text of the statute. As previously noted, the receiver is required to give notice to claimants upon their discovery, but the statute lacks any provision to deal with situations where the receiver overlooks or ignores the notice requirement.

Section 1821(d)(5)(C)(ii) [2] *allows* the receiver to ignore the bar date and consider claims from individuals who failed to receive notice. In order to avoid the aforementioned constitutional problems, the Bankruptcy Court in Texas interpreted the statute to *require* the receiver to allow late filing of such claims. The word "may" in that section becomes "must". *In re Scott*, 157 B.R. 297, 318. This construction cures the constitutional infirmities because a claimant is now able to file a late claim once he receives the required official notice and, at the same time, this approach preserves the preference of Congress for adjudication through the administrative claims procedure.

As noted by the Court in *Scott*, its interpretation of FIRREA appears to be in conflict with a previous ruling of the Fifth Circuit. *Compare In re Scott* 157 B.R. at 316–18 *with Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (5th Cir 1992). Fortunately, there is no real conflict. In *Meliezer* the Fifth Circuit ruled that the FDIC's failure to mail out notice did not *excuse* a claimant from complying with the claims procedure. *Meliezer* 952 F.2d at 883 [3]; *See also Glenborough New Mexico Associates v. Resolution Trust Corp.*, 802 F.Supp. 387, 392 (D.N.M. 1992). The Fifth Circuit's ruling does not foreclose a claimant's remedy, however. A claimant who failed to receive notice is treated like any other claimant. He is prohibited from suing *until* he files a claim under section 1821(d); if the FDIC denies the claim or fails to act, only then may the claimant sue. Unlike other late claimants who are barred, however, a claimant without notice will have some relief.

The Constitution mandates that a claimant without official notice as described by section 1821(d)(3)(C) will not be affected by the bar date. He has a reasonable time to file a complaint after receiving official notice. In other words, lack of notice does not remove the jurisdictional bar, it merely stays the bar date with respect to that claim. *See Federal*

---

**2.** 12 U.S.C. § 1821(d)(5)(C) provides:
(ii) Certain Exceptions
 Clause (i) shall not apply with respect to any claim filed by any claimant after the [bar date] and such claim may be considered by the receiver if—
 (I) the claimant did not receive notice of the appointment of the receiver in time to file such

claim before such date; and (II) such claim is filed in time to permit payment of such claim.

**3.** The opinion of the Fifth Circuit was based on narrow statutory grounds and it did not examine the constitutional ramifications.

*Deposit Ins. Corp. v. Glynn,* 1993 WL 413958 (N.D.Ill. Oct. 15, 1993) at *3. There is no conflict with *Meliezer,* because the claims procedure is still mandatory. Since judicial review would be available only after the claimant had utilized the claims procedure, this procedure avoids constitutional infirmities and, at the same time, follows the requirements of the FIRREA claims procedure and jurisdictional bar.

Turning to the case at bar, this Court determines that since the FDIC has failed to give defendant notice as required by section 1821(d)(3)(C), he could still proceed through the administrative claims procedure and then later file suit if his claims were disallowed.

*E. Defendant's Claims have been denied by the FDIC*

■ However, this Court concludes in this case that the actions of the FDIC constitute a *de facto* denial of any claims asserted against it by defendant. The FDIC has pursued defendant for the full amount of the deficiency without deducting anything for the claims of defendant. The fact that the FDIC has brought this suit indicates that it has already considered the issues involved. This amounts to an affirmative disallowance of defendant's claims pursuant to 1821(d)(5)(D)(i). *In re Scott,* 157 B.R. at 319. "[W]hen [the RTC[4]] makes a claim against others, it has in fact already engaged in the kind of administrative process that FIRREA was entitled to provide for claims against it." *In re All Season's Kitchen,* 145 B.R. 391, 396 (Bankr.D.Vt.1992).

The choice to move past the administrative claims procedure to the merits is reaffirmed when the Court focuses on the pragmatic concerns surrounding the case rather than the statute's dogmatic mandates.

Any attempt by defendant to file a claim with the FDIC at this late date undoubtedly would result in the denial of the claim. The FDIC has been in a dispute with defendant for several years and it seems certain that his claims would be summarily denied. Futility alone cannot serve as a basis for a determination that defendant's claims have been denied. *Federal Deposit Ins. Corp. v. The Satter Companies,* 791 F.Supp. 26, 28 n. 3 (D.Me.1992). However, in this case, plaintiff has acted consistently in a manner which indicates disallowance of defendant's claims.

Furthermore, judicial economy must be considered. This dispute has been on this Court's calendar for over two years in various guises. This is the Court's second written decision on the matter. There have been numerous hearings before the Court and volumes of memoranda, as well. To dismiss defendant's claims, force him to submit them to the receiver—where they would certainly be denied, and then wait for him to "re-sue" on the same claims in the instant case, would be an enormous waste of time and money.

Finally, It should be noted that Congress' expressed intent in enacting FIRREA was to, "dispose of the bulk of claims against failed financial institutions expeditiously and fairly." H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419 *reprinted in* 1989 U.S.C.C.A.N. 86, 215. To force defendant to return to the claims procedure two years after it closed and then file claims in this Court for a third time would fly in the face of Congress' desires. Congress also noted that the claims procedure was enacted to, "enable the FDIC to dispose of the bulk of claims against the failed financial institution without unduly burdening the District Courts." *Id.* This dispute has been a burden on this Court and disposing of it on the merits is the best way to fulfil the mandate of Congress to avoid future burdens and delays.

This Court, therefore, decides that the actions of the FDIC in bringing this case for recovery of a deficiency constitute a *de facto* denial of the claims of defendant. Such a determination accords with the practicalities involved in this particular situation. Accordingly, the jurisdictional bar contained in 12 U.S.C. § 1821(d)(13)(D) does not apply.

The Court wishes to make it clear that the present case is exceptional. This case involves claims that are certain to be denied by the FDIC and thus, would return at a later time to be litigated in this Court. This case does not resemble the core receivership claims where a depositor or vendor sues for

---

**4.** The RTC as receiver is subject to the same provisions of FIRREA as the FDIC. 12 U.S.C. § 1441a(b)(4).

debts. To conclude that defendant's claims have been denied by the FDIC and move on to the merits of the case immediately is logical and accords with the concerns of Congress. Any other result would elevate form over substance. Therefore, unless the doctrine of sovereign immunity blocks the assertion of these counterclaims against the FDIC in this case, the Court can proceed to consider them on the merits.

## II. SOVEREIGN IMMUNITY

■ Not only do sovereign immunity issues confront the defendant in his counterclaim against the FDIC, but they also arise from his motion to join the United States as a third party under Rule 14 of the Federal Rules of Civil Procedure. Defendant attempts to implead the United States under the Federal Tort Claims Act ("FTCA") on the same claims asserted against the FDIC. Since the motion was filed more than ten days after defendant's original answer, the Court has broad discretion to grant or deny the motion. Fed.R.Civ.P. 14(a). The Court should exercise its discretion to grant the motion if that will avoid duplicitous litigation. 6 Wright, Miller & Kane, *Federal Practice and Procedure* § 1443 (1990). However, the motion should be denied if the claims, when inserted into the case, will delay or disadvantage the existing action or if the third-party claims obviously lack merit. *See e.g. Karon Business Forms, Inc. v. Skandia Ins. Co.,* 80 F.R.D. 501, 505 (D.P.R.1978). This Court concludes that defendant's third-party claims lack merit as a matter of law in this case because the Court has no jurisdiction over those claims under the doctrine of sovereign immunity. Since a motion to dismiss under Rules 12(b)(1) of the Federal Rules of Civil Procedure would be granted if the United States were impled, the motion to file third party claims against the United States must be denied. However, as will be explicated later, those claims can be asserted against the FDIC by way of counterclaim.

### A. The Doctrine Generally

The doctrine of sovereign immunity dictates that, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ..., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain a suit." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) *quoting United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769–70, 85 L.Ed. 1058 (1941). Accordingly, the United States must consent to be sued before this Court has jurisdiction to hear a claim against it.

■ The sovereign immunity of the United States extends to its agencies. *See Massachusetts v. United States Veterans Admin.,* 541 F.2d 119, 123 (1st Cir.1976). The FDIC is an agency of the United States and is protected by the doctrine of sovereign immunity. *Federal Deposit Ins. Corp. v. Mangiaracina,* 16 N.J.Misc. 203, 198 A. 777, 779 (N.J.Cir.Ct.1938); *see Federal Home Loan Bank Bd. v. Hague,* 664 F.Supp. 245, 251 (W.D.La.1987) (Federal Saving and Loan Insurance Company considered an agency of the United States under the sovereign immunity doctrine).

There are two limited exceptions to the doctrine of sovereign immunity which must be examined in this case. First, the Federal Tort Claims Act if applicable provides an avenue for relief. Second, the "sue and be sued" clause in the legislation delimiting the FDIC's powers provides a potential source for the waiver of sovereign immunity.

### B. Torts against the FDIC through the FTCA

■ The FTCA allows a plaintiff to sue the government for certain torts. The First Circuit has noted, "The Federal Tort Claims Act contains a limited waiver of sovereign immunity for certain negligent or wrongful acts by government employees acting within the scope of their employment." *Hydrogen Technology Corp. v. United States,* 831 F.2d 1155, 1160 (1st Cir.1987). Here, defendant seeks to recover damages for the actions of the FDIC under the FTCA. It is well settled that a claim under the FTCA must be brought against the United States rather than against an individual agency. 28 U.S.C. § 2679(a), (b). The FDIC is considered an agency for the purposes of the Act. "It is axiomatic that claims for money damages

which sound in tort must be brought against the United States and not against the FDIC." *Sarraga v. Girod Vela & Co.*, 649 F.Supp. 11, 12–13 (D.P.R.1986); *Safeway Portland Employee's Federal Credit Union v. Federal Deposit Ins. Corp.*, 506 F.2d 1213, 1215–16 (9th Cir.1974). *Santoni v. Federal Deposit Ins. Corp.*, 508 F.Supp. 1012, 1014 (D.P.R.1981) *aff'd* 677 F.2d 174 (1st Cir. 1982). This rule applies whether the FDIC is being sued in its corporate capacity as well as in its capacity as a receiver of a failed financial institution. *See Federal Deposit Ins. Corp. v. Hartford Ins. Co. of Illinois*, 877 F.2d 590, 591–2 (7th Cir.1989).

The FTCA limits the type of claims that may be brought against the United States. Certain intentional torts are not actionable under the FTCA. 28 U.S.C. § 2680(h).[5] Such torts do not fall entirely outside the ambit of the Act, however. Claims excluded under section 2680(h) are deemed to be "cognizable" under the Act through section 2679(a). *Federal Deposit Ins. Corp. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 369–72 (7th Cir.1979); *Safeway Portland E.F.C.U. v. Federal Deposit Ins. Corp.*, 506 F.2d 1213, 1215–16; *see Edelman v. Federal Housing Admin.*, 382 F.2d 594, 597 (2nd Cir.1967). Section 2679 provides that the remedies provided under the FTCA are exclusive. Since the intentional torts listed in section 2680(h) can only be adjudicated through its provisions, and its provisions prohibit claims based on such torts, those claims are not actionable against the United States or its agencies. *Citizens Bank*, 592 F.2d at 371; *Edelman*, 382 F.2d at 597; *See Safeway Portland E.F.C.U.*, 506 F.2d at 1215–16; *Freeling v. Federal Deposit Ins. Corp*, 221 F.Supp. 955, 956–7 (W.D.Okl.1962), *aff'd* 326 F.2d 971 (10th Cir.1963).

## C. Intentional Torts Claims against the United States

■ Two of defendant's claims fall within section 2680(h): conspiracy to defraud and breach of contract asserted against the po-

tential third-party defendant United States. Defendant alleges that the FDIC and RTC conspired to fraudulently take his property. The conspiracy to defraud claim falls within the exclusions contained in section 2680(h). That provision bars suits based on misrepresentation and deceit. It also has been held to bar claims for fraud against the federal government. *United States v. Texarkana Trawlers*, 846 F.2d 297, 304 (5th Cir.1988) *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *Newberg v. Federal Savings and Loan Ins. Corp.*, 317 F.Supp. 1104, 1107 (N.D.Ill.1970) (counterclaim alleging conspiracy to defraud by the FSLIC barred by section 2680(h)); *Covington v. United States*, 303 F.Supp. 1145, 1149 (N.D.Miss. 1969). Therefore, defendant's alleged claim against the United States for conspiracy to defraud cannot be maintained.

■ Defendant further alleges a breach of contract by the FDIC. He has not specifically alleged any facts to support the claim that the FDIC breached a contract. The only contracts involved were the note and mortgage. Defendant admits to being in default under those agreements. Furthermore, his answer and counterclaim does not give any indication as to the nature of his "contract claim", but it is clear to the Court from the various hearings and memoranda filed that this particular claim sounds in one of two torts—either a rephrasing of his conspiracy to defraud claim or a claim that the FDIC interfered with his lease contract with Colonial.

From the outset of defendant's various lawsuits, his claims have been based on the alleged fraudulent conduct of FDIC and RTC. In fact, in his *Memorandum in Support of Defendant's Objection to Plaintiff's Motion to Dismiss Counterclaims*, defendant referred to his claims as "allegations of tortious conduct and constitutional violations," at p. 2. His answer and counterclaim does not indicate what conduct constituted a breach of contract, in what manner a con-

---

**5.** That section states,

"The Provisions of this chapter and section 1346(b) of this title shall not apply to—

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation, deceit, or interference with contractual rights* . . . ."

28 U.S.C. § 2680 (emphasis added).

tract was breached, or even which contract was breached.

Furthermore, defendant's attempt to implead the United States asserting the same "contract claim" supports the interpretation that the claim sounds in tort. In his motion to join the United States as a third-party, defendant pleads the FTCA as the sole source of jurisdiction. The FTCA does not apply to breach of contract claims. *Davis v. United States*, 961 F.2d 53, 56 (5th Cir.1991). Contract claims against the government are covered by the Tucker Act. *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963). Had the defendant actually envisioned his claim as sounding in contract, he would have plead jurisdiction under the Tucker Act. This is compelling evidence that the alleged contract claim actually sounds in tort.

It appears to the Court that defendant's alleged breach of contract claim is simply a rephrasing of his conspiracy to defraud claim. In which case, as noted previously, the claim is excluded by section 2680(h). However, the conduct alleged by defendant may also be a claim for tortious interference with contract rights because defendant's breach of contract allegation could also be construed as a complaint against the FDIC for interfering with the lease between defendant and Colonial. Such a claim would fall within another exception of the FTCA. The statute bars claims against the government for "interference with contract rights." 28 U.S.C. § 2680(h). This exclusion has been held to apply to situations similar to this case. *See United States v. Mullins*, 228 F.Supp. 748, 750 (W.D.Va.1964). However it is analyzed, the defendant's claim for breach of contract is excluded by section 2680(h) and therefore, cannot be maintained against the United States.

### D. Intentional Torts Claims against the FDIC

 Defendant makes his conspiracy to defraud and breach of contract claims against the FDIC as well as the United States. The FDIC's empowering legislation contains a "sue and be sued" clause. 12 U.S.C. § 1819(a) (fourth). This section operates as a waiver of sovereign immunity. *MCorp v. Clarke*, 755 F.Supp. 1402, 1412 (N.D.Tex. 1991). However, the FTCA, provides that an agency's "sue and be sued" authority does not apply to torts covered by the Act. 28 U.S.C. § 2679(a). Thus, for the torts it enumerates, the FTCA is the sole remedy available against agencies with the "sue and be sued" power. *Edelman v. Federal Housing Administration*, 251 F.Supp. 715 (E.D.N.Y. 1966) *aff'd* 382 F.2d 594 (2nd Cir.1967); *Freeling v. Federal Deposit Ins. Corp.*, 221 F.Supp. 955, 957 (W.D.Okla.1962) *aff'd* 326 F.2d 971 (10th Cir.1963). Accordingly, those counterclaims against the FDIC normally could not be maintained.

### E. Constitutional Claims

Defendant alleges that the conduct of the FDIC constitutes a violation of his constitutional rights of due process and equal protection under the federal and Rhode Island constitutions. The Ninth Circuit has recently held that so called constitutional torts are not cognizable under the FTCA. *Meyer v. Fidelity Savings*, 944 F.2d 562, 568–72 (9th Cir.1991), *cert. granted sub nom. Federal Deposit Ins. Corp. v. Meyer*, — U.S. —, 113 S.Ct. 1576, 123 L.Ed.2d 145 (1993), and *cert. denied*, — U.S. —, 113 S.Ct. 1578, 123 L.Ed.2d 146 (1993). In *Meyer*, the Court distinguished between two types of claims excluded by the FTCA. The first type, known as the "explicitly excluded" claims are contained in section 2680. As noted above, such claims are cognizable under the FTCA and, therefore, no remedy is available.

 The second type of excluded claims, known as the "implicitly excluded" claims, fall without the coverage of the FTCA. The statute provides that the FTCA only pertains to causes of action for which, "a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Meyer*, 944 F.2d at 569. Since constitutional torts only apply to governmental institutions, they are not affected by the provisions of the Act, including the provisions concerning the waiver of sovereign immunity. *See Castro v. United States*, 775 F.2d 399,

405 (1st Cir.1985). Thus, the provision of the FTCA which waives the United State's sovereign immunity is not applicable and, therefore, it may not be sued. Accordingly, this Court has no jurisdiction over the third party constitutional claims asserted against the United States.

██ The situation is different for plaintiff, FDIC. Through its empowering legislation, the FDIC has the power to "sue and be sued". 12 U.S.C. § 1819(a) (fourth). As noted above, this section operates as a waiver of sovereign immunity. As also noted previously, the FTCA specifically withdraws this broad waiver of sovereign immunity for torts cognizable under the FTCA in favor of its provisions. Since constitutional torts are not cognizable under the Act, the provision of the FTCA which revokes the "sue and be sued" power is inapplicable. Thus, the waiver of sovereign immunity under 12 U.S.C. § 1819(a) (fourth) is still in effect. *See Meyer*, 944 F.2d at 568–72. The FDIC, therefore, is subject to suit for claims alleging constitutional torts. Thus, the two counterclaims in this case alleging that the FDIC committed constitutional torts can be maintained.

### F. Recoupment Claims

██ Finally, defendant asserts that his counterclaims are really claims for recoupment and, therefore, need no independent jurisdictional basis. Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the transaction or occurrence giving rise to the plaintiff's claim. *United Structures of America, Inc. v. G.R.G. Engineering, S.E.*, 9 F.3d 996, 1993 WL 466489 at * 2 (1st Cir. Nov. 18, 1993); *Federal Savings and Loan Ins. Corp. v. Smith*, 721 F.Supp. 1039, 1042 (E.D.Ark.1989). In order to avoid the procedural requirements of the FTCA, a recoupment counterclaimant must, in addition to addressing the same transaction or occurrence as the main claim, only aim at defeating the government's claim. *Federal Deposit Ins. Corp. v. Miller*, 781 F.Supp. 1280, 1285 (N.D.Ill.1991); *see also Federal Savings and Loan Ins. Corp. v. Quinn*, 419

F.2d 1014, 1017 (7th Cir.1969). Even claims that are specifically barred by the FTCA through 28 U.S.C. § 2680 may be brought under the doctrine of recoupment. *United States v. Johnson*, 853 F.2d 619, 621 (8th Cir.1988); *see Federal Deposit Ins. Corp. v. Lattimore Land Corp.*, 656 F.2d 139, 143 (5th Cir.1981). *But see*, 1 Lester S. Jayson, *Handling Federal Tort Claims* § 165.01 at 5:171–174. The extent of the recoupment claimant's recovery is limited to the amount of the plaintiff's recovery, because the recoupment exception does not extend to claims seeking affirmative relief. *Quinn*, 419 F.2d at 1017. The Court in *Miller* noted:

> The reasoning behind restricting the recoupment exception to only defensive claims is that a claim whose object is only to reduce or eliminate the government's claims does not implicate recovery from the United States Treasury. It therefore does not raise the same sovereign immunity concerns as a suit which seeks to recover money in addition to defeating the government's claim.

781 F.Supp. at 1285.

██ In the present case, two claims remain excluded by the FTCA, the conspiracy to defraud claim and the "contract" claim. Defendant's position is that the activities of the FDIC interfered with his ability to cure the default on his mortgage. Plaintiff's claim is for the deficiency on the mortgage which arose from that default. These two issues clearly fall within the same transaction and occurrence. Under the recoupment exception, therefore, defendant may recover on the tort and "contract" claims if he succeeds on the merits, but only up to the extent of the FDIC's recovery.

In summary, if defendant succeeds on the merits of either or both of his constitutional tort claims against plaintiff FDIC, he can recover affirmatively. Moreover, if he succeeds on the merits of either or both of his other two counterclaims (based on conspiracy to defraud and "contract") he can only recover in recoupment.

### CONCLUSION

For the reasons set out above, this Court concludes that the four claims asserted

against the putative third-party defendant, the United States, are barred by the doctrine of sovereign immunity. Accordingly, the motion to implead the United States under Rule 14 of the Federal Rules of Civil Procedure must be denied. As has been explained in this opinion, the Court also concludes that defendant's four counterclaims against the FDIC are not jurisdictionally barred by FIERRA, and also are not barred by the doctrine of sovereign immunity. Therefore, plaintiff's motion to dismiss defendant's counterclaims must be denied.

It is so ordered.